UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIED SYSTEMS, LTD. (L.P.)

        Plaintiff,

v

TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
& HELPERS LOCAL UNION NO. 299,
KEVIN D. MOORE, its officers, agents,
employees and members

        Defendants

Civil Action No.   .:
Hon.

---

JANET E. LANYON (P34844)
KENNETH W. ZATKOFF (P40601)
DEAN & FULKERSON, P.C.
Attorney for Plaintiff
801 W. Big Beaver Rd., Ste. 500
Troy, MI 48084
(248) 362-1300

## VERIFIED COMPLAINT

Plaintiff, Allied Systems, Ltd. (L.P.) ("Allied"), by way of Verified Complaint against Defendants alleges the following:

### JURISDICTION

1.    This action to enjoin strike activity that violates a collective bargaining agreement arises under Section 301 of the Labor Management Relations Act, 29 U.S.C., Section 185, as amended, pursuant to which this Court has jurisdiction without regard to the parties' citizenship or the amount in controversy.

2.    Plaintiff Allied Systems, Ltd., is a Georgia limited partnership, with its principal place of business in Atlanta, Georgia. Allied has terminal and yard facilities

located throughout the United States, including an operation located at 21500 Mound Road, Warren, Michigan. Plaintiff Allied is a motor carrier service company engaged in the over-the-road transportation of motor vehicles throughout the United States and Canada. Plaintiff is thus engaged in interstate commerce within the meaning of the Labor Management Relations Act, 29 U.S.C., Section 185, and is also an "employer" within the meaning of the same Act.

3. Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 299, affiliated with the International Brotherhood of Teamsters, AFL-CIO, (hereinafter referred to as the "Union" or "Local 299") is a labor organization with an office located at 2741 Trumbull Ave. Detroit, Michigan 48216, and has been and is the exclusive bargaining agent for a unit of Plaintiff Allied's drivers in Warren, Michigan. Defendant Kevin D. Moore is the President of Local 299. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## THE COLLECTIVE BARGAINING AGREEMENT

4. Plaintiff and Defendant Union are signatory to the National Master Automobile Transporters Agreement ("National Agreement") and the Central and Southern Area Truckaway, Local and Garage Operations Supplemental Agreement ("Central-Southern Supplement") collectively referred to herein as the Collective Bargaining Agreement for the period of June 1, 2008 to May 31, 2011. (National Agreement attached hereto as Exhibit "A").

5. The Collective Bargaining Agreement between Plaintiff and Defendant Union provides, in part, the following in Article 7, Section 1:

> The parties agree that all grievances and questions of interpretation arising from the provisions of this Agreement shall be submitted to the grievance procedure for determination.
>
> <u>The Unions and the Employers agree that there shall be no strike, tie-up of equipment, slowdown or walkout on the part of the employees,</u> nor shall the Employer use any method of lockout or legal proceeding without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise. (Emphasis supplied)

Article 7 also provides a specific method for resolving any disputes which may arise between the parties with the exception of five (5) specified matters, none of which are involved herein.

6. The Collective Bargaining Agreement between Plaintiff and Defendant Union also provides in Article 7, Section 13:

> Unless otherwise expressly provided in this Agreement, any and all disputes including interpretations of contract provisions arising under, out of, in connection with, or in relation to the collective bargaining agreement, shall be subject to the grievance procedure of the Agreement.

7. With respect to the finality of any arbitration award, Article 7, Section 8(e) of the Collective Bargaining Agreement states:

> Any decision of any of the Joint Arbitration Committees shall be final and binding upon the Employer, the Local Union, and the employees.

## THE CURRENT STRIKE

8. On Monday, November 2, 2009, at approximately 6:00 AM, Teamsters Local 299 established a picket line at 20740 Mound Road, Warren, Michigan, an entrance to the Chrysler "Dodge City" assembly facility approximately ½ mile away from the entrance from which Allied operates at 21500 Mound Road. Teamsters Local 299 has asserted that the

3

picketing is "area standards" picketing protesting the "labor cost package" offered by certain non-union employers who use the 20740 Mound Road entrance. Citing this picketing, Allied drivers represented by Teamsters Local 299 walked off the job. On November 3, 2009, Allied prepared and sent to Mr. Kevin Moore, President of Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 299, a certified letter concerning that strike and reminding him of the no-strike clause in the collective bargaining agreement (Exhibit A) between the parties. A copy of that correspondence is attached as Exhibit B.

9.  Allied also sent a letter to Fred Zuckerman, Co-Chairman of the Teamsters Carhaul Division (Exhibit C), pursuant to the provisions of Article 7, Section 2 of the collective bargaining agreement to ascertain if the strike was authorized. Article 7, Section 2 reads in part:

> "In the event of a work stoppage, slowdown, walkout or cessation of work not permitted by the provisions of Article 7, Section 1, alleged to be in violation of this Agreement, the Employer shall immediately send a telegram or facsimile to the TNATINC Co-Chairperson and the designated area representative to determine if such strike, slowdown, walkout or cessation of work alleged to be in violation of this Agreement shall be deemed to be authorized unless notification thereof by telegram or facsimile has been received by the Employer and Local Union from TNATINC Co-Chairperson and the designated area representative. If no response is received by the Employer within twenty-four (24) hours following actual receipt by the TNATINC Chairperson and the designated area representative of the Employer's request, excluding Saturdays, Sundays and holidays, such strike, etc. in violation of this Agreement shall be deemed to be unauthorized by TNATINC for the purposes of this Agreement.
>
> In the event of such unauthorized work stoppage or picket line, etc., in violation of this Agreement, the Local Union shall immediately make every effort to persuade the employees to

> commence a full performance of their duties and shall immediately inform the employees that the work stoppage and/or picket line is unauthorized and in violation of this Agreement. The question of whether employees who refuse to work during such unauthorized work stoppages, in violation of this Agreement, or who fail to cross unauthorized picket lines at their Employer's premises shall be considered as participating in an unauthorized work stoppage in violation of this Agreement, may be submitted to the grievance procedure."

The correspondence to Mr. Zuckerman was in his dual capacity at the designated area representative as and the TNATINC Co-Chairperson.

10. Since the picketing began on November 2, 2009, Allied drivers represented by Local 299 have refused to enter the property located at 21500 Mound Road to pick up or deliver motor vehicles consigned by Chrysler to Allied for transport.

11. Mr. Zuckerman responded to Allied's correspondence on November 3, 2009. Mr. Moore responded on November 4, 2009. Copies of these responses are attached as Exhibits D and E. Both letters acknowledged that Local 299's dispute is not with Allied. Both letters go on to highlight the fact that there is a disagreement over the protection, if any, afforded by Article 8 of the Collective Bargaining Agreement for those drivers refusing to "work beyond" the Local 299 picket line established at the non-Allied Mound Road gate.

12. Article 8, Section 1 of the collective bargaining agreement states as follows:

> "It shall not be a violation of this Agreement, and it shall not be cause for discharge, disciplinary action or permanent replacement, in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work beyond any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's place of business."

Pursuant to the provisions of Article 7, Section 13, any disputes including interpretations of contract provisions are subject to the grievance procedure. Thus, the questions of whether or not the Local 299 picket line in Warren, Michigan is a primary picket line covered by the provisions of Article 8, Section 1 and whether Allied's drivers represented by Local 299 would be required to "work beyond" a primary picket line by picking up vehicles consigned to Allied by Chrysler using an Allied gate approximately ½ mile away from the picket line are matters which can be resolved under the grievance procedure of the collective bargaining agreement. Accordingly, the dispute between the parties encompasses grievable issues covered by the contractual grievance and arbitration procedure and is, therefore, subject to the contractual no-strike clause contained in Article 7, Section 1.

13.     The current strike at Warren, Michigan is not a primary picket line and is not protected by the provisions of Article 8, Section 1 quoted above.

14.     The work stoppage and tie up of Plaintiff's trucking operations at Warren, Michigan is a result of Local 299's assertions that its picket line at 20740 Mound Road is a primary picket line and that any work performed which would require drivers to access vehicles well away from the picket line using an entrance remote from the picket line is work "beyond" a primary picket line . However, because its dispute is an economic dispute with the non-union carriers entering 20470 Mound Road, the Local 299 picket line is not a primary picket line as to Allied and because the work performed by Allied's Teamster employees is performed well away from the picket line by using a separate, remote entrance, they are not required to work beyond the secondary picket line erected by Local

299. This question is one arising under the collective bargaining agreement as it involves the interpretation of language contained in Article 7 and in Article 8, Section 1 of that Agreement and is a matter which Allied is prepared to process through the collectively bargained for grievance and arbitration process. Allied has filed a grievance with the Local 299 and conveyed its willingness to arbitrate this question of contract interpretation to Mr. Moore as the authorized representative of Teamster Local 299. (See attached Exhibit F).

15. Defendant participated in and/or aided or abetted the work stoppage and tie up which has caused a cessation of normal business operations at Allied's Warren, Michigan operations.

## THE IMMINENT AND IRREPARABLE HARM RESULTING FROM THE STRIKE

16. The above mentioned work stoppage and tie up at Plaintiff's Warren, Michigan operations is causing and will continue to cause irreparable harm to Plaintiff. The disruption of business and the inability of Plaintiff to pickup and deliver motor vehicles in a prompt manner will cause irreparable harm to Plaintiff's relationship with Chrysler Group, LLC. The work stoppage and tie up of equipment has caused Chrysler to divert Allied's traffic to non-union carriers and raises the specter of permanent diversion of traffic from Plaintiff to other carriers but for the Court's grant of a temporary restraining order.

17. The ongoing work stoppage and tie up will continue unless the requested relief is granted and Defendants' tactics of entwining Allied in a work stoppage in which it is not a party in order to put pressure on other parties with which Defendant has a dispute is restrained by the Court.

18. With respect to each item for which relief is sought herein, a greater injury will be inflicted upon Plaintiff by the denial of the relief than would be inflicted upon Defendant Union and its members by granting the relief. In fact, no injury can result to Defendant Union or its members by requiring them to desist from the commission of such acts which the Defendant Union has no right to presume to do and the granting of the relief sought herein will not deprive Defendant Union or its members who are employed by Plaintiff or any other employees of Plaintiff of any benefit to which they are entitled, but merely prevent them from performing acts which are in violation of the collective bargaining agreement and the policy of the National Labor Relations Act.

19. Plaintiff has suffered and will continue to suffer substantial and serious loss of business, customer patronage, goodwill, and will suffer immediate, substantial and irreparable injuries such that damages could not adequately compensate for same, and Plaintiff has no adequate remedy at law, unless relief is granted and the Defendants are restrained and enjoined from engaging in the tie up of equipment as set forth herein.

WHEREFORE, Plaintiff requests:

(1) That Defendant Union, its members and all persons in active concert or participation with Defendant Union or its members, including those employed by Plaintiff or any of them be permanently enjoined and restrained as follows:

   A. From engaging in any strike, work stoppage, tie up or concerted refusal to perform the normal duties of their employment with Plaintiff in breach of the collective bargaining agreement between the parties.

    B. From, in breach of the collective bargaining agreement between the parties, concertedly refraining from performing their services at Plaintiff's 21500 Mound Road, Warren, Michigan facility.

    C. From inducing any of Plaintiff's employees to engage in a strike, work stoppage, tie up or concerted refusal to perform their services in breach of the collective bargaining agreement between the parties.

    D. From engaging in picketing or mass assembly at Plaintiff's aforementioned facilities or operations in support of any strike or work stoppage in breach of the collective bargaining agreement between the parties.

(2) For a mandatory injunction issued to Defendant Union and its members to specifically perform the collective bargaining agreement and to require Defendant Union and its members to cease threatened strikes, work stoppages, tie ups or curtailment at Plaintiff's Warren, Michigan operations to enforce its position on its pending dispute with a third party and to submit any dispute it has concerning the meaning or intent of the collective bargaining agreement to the grievance machinery provided for in the collective bargaining agreement.

(3) That Defendant Union be ordered to comply with its obligations to enter into arbitration with Plaintiff as required by the attached collective bargaining agreement.

(4)  That the Court retain jurisdiction of this action pending final resolution of such disputes as may exist for the purpose of giving Plaintiff such further relief as may be necessary.

(5)  That Plaintiff obtain judgment for such other and further relief as may be deemed warranted and just together with costs and attorneys fees.

Respectfully submitted,

**DEAN & FULKERSON, P.C.**


By:  s/Janet E. Lanyon
     Janet E. Lanyon (P34844)
     Kenneth W. Zatkoff (P40601)
801 West Big Beaver Rd., Fifth Floor
Troy, Michigan 48084
(248) 362-1300
Facsimile (248) 362-1358
jlanyon@dflaw.com

Attorneys for Plaintiff
Allied Systems, Ltd. (L.P.)

Dated: November 5, 2009

## VERIFICATION

STATE OF MICHIGAN   )
                    )SS.
COUNTY OF Macomb    )

Dennis Burley, of full age, being duly sworn, upon oath, deposes and says:

1.  I am employed by Allied Systems, Ltd. (L.P.) ("Allied") as its Area Manager and, in that capacity, am responsible for Allied's Warren, Michigan operation located at the Chrysler Group, LLC "Dodge City" facility.

2.  I have read the foregoing Complaint and know the contents thereof to be true based on my personal knowledge, except as to those matters stated upon information and belief, and as to those matters I am informed and believe that they are true.

_____
Dennis Burley

Subscribed and sworn to before me this 5TH
day of November, 2009

_____
Notary Public, Macomb County, MI
My commission expires: Sept 26, 2013

ERIC B. HORNER
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Sep 26, 2013
ACTING IN COUNTY OF Macomb

11