From:

11/03/2009 16:05    #137 P.002/003

Teamsters

Washington, D.C. 20001

# National Automobile Transporters Industry Negotiating Committee

November 3, 2009

**VIA Fax (248) 680-6699 and U.S. Mail**
Mr. Robert L. Hutchison, Senior Vice President
Allied Automotive Group
100 W. Big Beaver Road, Suite 200
Troy, MI 48084

Re: Chrysler Assembly Plant, Warren MI

Dear Mr. Hutchison:

This letter responds to your letter dated November 2, 2009 on behalf of Allied Automotive Group, received by email delivered at 11/2/2009 8:06:10 P.M. Eastern Standard Time. This letter was not actually received by the Teamsters National Automobile Transporters Industry Negotiating Committee ("TNATINC") Co-Chairperson in Washington, DC as required by the NMATA. This response is provided pursuant to the time periods authorized by Article 7, Section 2(a) of the NMATA.

It is the understanding of TNATINC that no strike or work stoppage caused by Local 299 has occurred on November 2, 2009 or any other time arising out of any dispute between Teamsters Local Union No. 299 and signatory affiliates of Allied Automotive Group at the Warren, MI work site. It is also our understanding that, as you point out in your November 2, 2009 letter, Teamsters Local Union No. 299 does have an active primary labor dispute involving area standards with separate employers named Vascor, Ltd., Adecco Services, VLS, Trans Tech, and other substandard employers. Therefore, there is no dispute between Local 299 and signatory affiliates of Allied Automotive Group arising under Article 7, Sections 1 and 2 of the NMATA.

Area standards picketing is engaged in by a union to protect the employment standards it has successfully negotiated in a particular geographic area from the unfair competitive advantage that would be enjoyed by an employer whose labor cost package was less than those of employers subjected to the area contract standards. Such picketing is protected under Section 7 of the NLRA as a right of employees to protect advancements that they have made in collective bargaining. We understand Local 299's goal in this dispute with these substandard employers is to protect the negotiated area standards from the unfair competitive advantage that would come to an employer whose labor cost package was less than those of employers subjected to the area contract standards. Local 299, we also understand, seeks no more than an equalization of competitive advantage now enjoyed by these substandard employers in this area.

Mr. Robert L. Hutchison
November 3, 2009
Page Two

Any such lawful conduct by Local 299's membership is protected by Section 7 of the National Labor Relations Act and constitutes a "primary labor dispute" between Local 299 and these substandard employers for purposes of Article 8, Section 1 of the NMATA. We understand that the picketing conducted on November 2, 2009 at the Warren, MI work site constitutes a "primary picket line" under Article 8, Section 1 of the NMATA and complies with all provisions of the "Moore Dry Dock" rules in regard to Local 299's dispute with the primary employers Vascor, Ltd., Adecco Services, VLS, Trans Tech and other substandard employers engaged in normal activities at the Warren, MI work site.

It is our information that Local 299's action on November 2, 2009 **does not** violate the provisions of Article 7, Sections 1 and 2 of the NMATA, as alleged in your November 2nd letter. Although your November 2nd letter claims Allied Systems, Ltd. transports vehicles in and out of the Warren, MI vehicle shifting yard through "its own clearly marked gate" located at 21500 Mound Road, that gate is regularly being utilized by the substandard employers, such as Trans Tech and VLS. It is our understanding that Allied does not maintain a purely separate gate at the Warren, MI work site. The normal activity of Vascor, Ltd. and Adecco Services is regularly being performed throughout the Warren, MI work site. It seems to us that the Warren, MI work site is a "property involved in a primary labor dispute" and persons entering the property are required to "go through or work beyond" a primary picket line. We also understand that actions undertaken by any NMATA bargaining unit employees on November 2, 2009 are expressly authorized and protected by the provisions of Article 8, Section 1 of the NMATA.

TNATINC has received no information that would lead us to believe that the conduct by Local 299 members described in your November 2nd letter, or my separate investigation of that alleged conduct, would be deemed to be unauthorized by TNATINC for the purposes of the NMATA. In fact, the conduct you have alleged against Local 299 appears to be expressly authorized and protected as a primary labor dispute under the provisions of the NLRA.

As always, TNATINC is available to meet and discuss any of these matters with your Employer representatives and representatives of NATLD. If you have specific information contrary to our understandings, please provide such information immediately. Please contact me if you desire a conference on this matter.

Sincerely,

Fred Zuckerman,
Co-Chairman, TNATINC

FZ/jwm

cc:   Kevin D. Moore, President, Teamsters Local Union No. 299
      James D. Osmer, Esq., Employer Chairman, NATJAC