IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIED SYSTEMS, LTD. (L.P.),
        Plaintiff,

v.

Case No. 2:09-cv-14365−PDB−MAR
Hon. Paul D Borman, U.S.D.J.

TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN & HELPERS
LOCAL UNION No. 299,
KEVIN D. MOORE, et al.,
        Defendants.

**MOTION TO DISMISS ON BEHALF OF
DEFENDANTS TEAMSTERS LOCAL UNION No. 299 AND
KEVIN D. MOORE**

Pursuant to Fed. R. Civ. P. Rule 12(b)(1)(lack of jurisdiction), and Rule 12(b)(6)(failure to state a claim), Defendant Truck Drivers Local Union No. 299 (hereinafter "Teamsters Local 299"), a labor organization, and Defendant Kevin D. Moore, President and principal officer of Teamsters Local 299, moves to dismiss Plaintiff's November 5, 2009 Verified Complaint. Pursuant to Local Rule 7.1(a)(2)(A), after telephone conference between counsel for the parties, Plaintiff did not consent to dismissal of the Complaint as requested in this motion. Pursuant to Local Rule 7.1(c)(1)(A), a Brief supporting this Motion is contained within on the following pages.

**BRIEF OF DEFENDANTS TEAMSTERS LOCAL UNION No. 299
AND KEVIN D. MOORE
IN SUPPORT OF MOTION TO DISMISS**

**LR 7.1(c)(1)(A) Statement of Issues Presented:**

1.   Whether the Court lacks subject matter jurisdiction over Plaintiff's claims for injunctive relief in a labor dispute under the Norris-LaGuardia Act ("NLG Act"), 29 U.S.C. § 101 et seq.

2.   Whether the Plaintiff's Complaint has failed to state a claim upon which relief may be granted under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, because Plaintiff has failed to allege a dispute giving rise to the alleged "sympathy strike" that is subject to arbitration under the collective bargaining agreement.

**LR 7.1(c)(1)(A) Statement of Most Relevant Authorities:**

Norris-LaGuardia Act ("NLG Act"), 29 U.S.C. § 101 et seq.

Buffalo Forge Co. v. United Steelworkers of America, 428 U.S. 397, 96 S. Ct. 3141, 49 L. Ed. 2d 1022 (1976)(A sympathy strike is not subject to court injunction where the strike is not over an arbitrable grievance, and, thus, not within the narrow Boys Markets exception to the Norris-LaGuardia Act).

Allied Sys. Ltd. v. Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm., Local Union 327, 179 F.3d 982, 989 (6th Cir. 1999) ("so long as the right to strike is interrelated with an ambiguity in a collective bargaining agreement, a federal court is without jurisdiction to issue a Boys Markets injunction");

Complete Auto Transit, Inc. v. Reis, 614 F.2d 1110, 1113 (6th Cir. 1980), aff'd 451 U.S. 401, 68 L. Ed. 2d 248, 101 S. Ct. 1836 (1981) ("the fact that the legality of a strike may itself present an arbitrable question does not empower a federal court to enjoin the strike. Only if the underlying dispute the one "over" which the workers are striking is arbitrable, will the Boys Markets exception permit a federal court to enjoin a strike");

Waller Bros. Stone Co. v. United Steelworkers of America, 620 F.2d 132, 133 (6th Cir. 1980)(a reservation of a right to strike in a collective bargaining agreement negates any inference that the court retains the power to issue an injunction);

      Teamsters v. Yellow Transit Freight Lines, 370 U.S. 711, 8 L. Ed. 2d 792, 82 S. Ct. 1293 (1962), the Supreme Court held that a no-strike injunction had been issued in violation of the Norris-LaGuardia Act because no neutral arbitration of the dispute was mandated under the agreement.  See, American Tel. & Tel. Co. v. Communications Workers of America, 985 F.2d 855 (6th Cir.1993)(same).

      Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 205-06 & n.42, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978)(a union's peaceful area standards activity is protected by section 7 of the NLRA).

      International Longshoremen's Asso. v. Ariadne Shipping Co., 397 U.S. 195, 90 S. Ct. 872, 25 L. Ed. 2d 218, (1970)(a union's peaceful primary picketing to protest wage rates below established area standards constituted protected activity under § 7).

      Giant Food Markets, Inc. v. NLRB, 633 F.2d 18, 23 n.11 (6th Cir. 1980)(A union engages in area standards activity "'to protect the employment standards it has successfully negotiated in a particular geographic area from the unfair competitive advantage that would be enjoyed by an employer whose labor cost package was less than those of employers subjected to the area contract standards.'" (quoting Giant Food Markets, Inc., 241 N.L.R.B. 727, 728 (1979)).

      Pulte Homes v. Laborers' International Union of North America, Case No. 2:09-cv-13638-LPZ, U.S. District Court, E.D. Mich., Opinion and Order of the Honorable Lawrence P. Zatkoff, U.S.D.J., filed September 24, 2009, reported at 2009 U.S. Dist. LEXIS 87955(Norris-LaGuardia Act bars injunctions in labor disputes);

      E. and L. Transport Company v. Teamsters Local 299, Case No. 2:98-cv-72780-GER, U.S. District Court, E.D. Mich., Opinion and Order of the Honorable Gerald E Rosen, U.S.D.J., filed July 16, 1998 (strike injunction denied under NMATA where dispute which caused picketing was not subject to arbitration);

      Maiers Motor Freight Co. v. Teamsters Truck Drivers Local Union No. 299, 113 L.R.R.M. (BNA) 2822 (E.D. Mich. Dec. 8, 1982)(Judge Boyle)(strike injunction denied where dispute that caused the picketing was not found clearly to be subject to arbitration);

      Automobile Transport, Inc. v. Ferdnance, 420 F. Supp. 75 (E.D. Mich. 1976)(strike injunction denied under NMATA where dispute which caused picketing was not subject to arbitration);

      Fed.R.Civ.P. 12(b)(1) ("lack of jurisdiction over the subject matter");

      Fed.R.Civ.P.12 (b)(6) ("failure to state a claim").

**STATEMENT OF CASE**

**The Complaint alleges a "labor dispute" subject to the Norris-LaGuardia Act:**

On November 5, 2009, Plaintiff Allied Systems, Ltd.(L.P.), ("Allied") filed a verified complaint for injunctive and other relief against Truck Drivers Local Union No. 299 ("Teamsters Local 299 or Local 299") and its principal officer Kevin D. Moore, asserting federal question subject matter jurisdiction under the Labor Management Relations Act ("LMRA"), 29 U.S.C § 185.  Complaint ¶¶ 1, 2 and 3.   Allied is described as "a motor carrier service company engaged in the over-the-road transportation of motor vehicles throughout the United States and Canada" and is an employer of employees in interstate commerce. Complaint ¶ 2.   Teamsters Local 299, a labor organization representing employees of Allied, and Allied are parties to a collective bargaining agreement entitled the National Master Automobile Transporters Agreement and the Central and Southern Area Truckaway, Local and Garage Operations Supplemental Agreement, collectively referred to in this motion as "NMATA".  Complaint ¶¶ 3 and 4.  A copy of the National portion of the NMATA is Complaint Exhibit A.

**Allied alleges that bargaining unit employees are engaged in a so-called "sympathy strike":**

Allied states that on Monday, November 2, 2009, Teamsters Local 299 established a picket line at an address described as "20740 Mound Road, Warren, Michigan" and an entrance to a Chrysler Group, LLC assembly facility located "approximately ½ mile away from the entrance from which Allied operates at 21500 Mound Road".  Complaint ¶ 8.  Allied admits that this picketing is not directed at Allied, but rather concerns a wholly separate labor dispute between Teamsters Local 299 and certain other employers at the Warren, Michigan location regarding "area standards" and that Local 299's activities at that location constitute "picketing

4

protesting the 'labor cost package' offered" by these other Employers, who are unaffiliated with Allied. Complaint ¶ 8.

Allied's Complaint then asserts: "[c]iting this picketing, Allied drivers represented by Teamsters Local 299 walked off the job"[1], Complaint ¶ 8.  At Complaint ¶ 10, Allied asserts:

> "Since the picketing began on November 2, 2009, Allied drivers represented by Local 299 have refused to enter the property located at 21500 Mound Road to pick up or deliver motor vehicles consigned by Chrysler to Allied for transport".

At Complaint ¶ 14, Allied admits that Local 299's dispute is "an economic dispute with" other Employers operating at the Warren, Michigan facility and that "the Local 299 picket line is not a primary picket line as to Allied".  Additionally, in the November 3, 2009 letter to Teamsters Local Union No. 299 President Kevin D. Moore, attached as Complaint Exhibit B, Allied's Senior Vice President Robert L. Hutchison states: "to our knowledge, Teamsters Local 299 does not have or claim to have any labor dispute with Allied or Chrysler Corporation, whose vehicles are transported by Allied."

Further, in a November 3, 2009 letter from TNATINC Co-Chairman Fred Zuckerman, attached as Complaint Exhibit D, the Complaint references a description of Local 299 primary actions[2] at the Warren, Michigan worksite:

> "Area standards picketing is engaged in by a union to protect the employment standards it has successfully negotiated in a particular geographic area from the unfair competitive advantage that would be enjoyed by an employer whose labor cost package was less than those of employers subjected to the area contract

---

[1] This allegation will be denied in any Answer.  If necessary, Local 299 will present evidence that no Allied employee has ceased the performance of any assignments made by Allied since November 2nd.

[2] Giant Food Markets, Inc. v. NLRB, 633 F.2d 18, 23 n.11 (6th Cir. 1980)(A union engages in area standards activity "'to protect the employment standards it has successfully negotiated in a particular geographic area from the unfair competitive advantage that would be enjoyed by an employer whose labor cost package was less than those of employers subjected to the area contract standards.'" (quoting Giant Food Markets, Inc., 241 N.L.R.B. 727, 728 (1979)).

standards. Such picketing is protected under Section 7 of the NLRA as a right of employees to protect advancements that they have made in collective bargaining.[3] We understand Local 299's goal in this dispute with these substandard employers is to protect the negotiated area standards from the unfair competitive advantage that would come to an employer whose labor cost package was less than those of employers subjected to the area contract standards. Local 299, we also understand, seeks no more than an equalization of competitive advantage now enjoyed by these substandard employers in this area."
See, Complaint Exhibit D, third paragraph.

The Complaint also references a November 4, 2009 letter from Teamsters Local 299 President Kevin D. Moore to Allied Senior Vice President Hutchison, Complaint Exhibit E, describing the actual picketing at the Warren, Michigan worksite:

"Although your November 2nd letter claims Allied Systems, Ltd. transports vehicles in and out of the Warren, MI vehicle shifting yard through 'its own clearly marked gate' located at 21500 Mound Road, that gate is regularly being utilized by the substandard employers, such as Trans Tech and VLS[4]. It is our understanding that Allied does not maintain a purely separate gate at the Warren, MI work site. The normal activity of Vascor, Ltd. and Adecco Services is regularly being performed throughout the Warren, MI work site." Complaint Exhibit E, third paragraph.

The Complaint alleges at several points that the "area standards" dispute giving rise to the "sympathy strike" sought to be enjoined is **not** the result of a dispute with Allied that would be arbitrable between Allied and Local 299. The Complaint references each of the letters sent by Allied Senior Vice President Hutchison, on November 2, 3 and 4, 2009, where Allied states that the actions of Local 299 members at the Warren, Michigan worksite "constitute[] a violation of

---

[3] Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 205-06 & n.42, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978)(a union's peaceful area standards activity is protected by section 7 of the NLRA); International Longshoremen's Asso. v. Ariadne Shipping Co., 397 U.S. 195, 90 S. Ct. 872, 25 L. Ed. 2d 218, (1970)(a union's peaceful primary picketing to protest wage rates below established area standards constituted protected activity under § 7).

[4] See, Linbeck Constr. Corp. v. NLRB, 550 F.2d 311, 317-18 (5th Cir. 1977) (regarding breakdown or taint of reserve gate system). When a union complies with the Moore Dry Dock standards for common situs picketing, the picketing is presumed to be lawful primary activity. See, International Union of Operating Eng'rs, Local 150 v. NLRB, 47 F.3d 218, 222 (7th Cir. 1995).

the no-strike clause contained in Article 7 of the National Agreement". Complaint Exhibit B, second paragraph. The November 3rd letter from Hutchison to Moore is described in the Complaint as a "certified letter concerning that strike and reminding him of the no-strike clause in the collective bargaining agreement" and claims that "Allied will hold Teamsters Local 299 liable for any and all damages sustained by the Company due to the disruption of its business". Complaint ¶ 8 and Complaint Exhibit A, second paragraph.

Likewise, the November 4th letter from Hutchison to Moore, threatens that "any Allied Systems driver refusing to cross the picket line will be subject to disciplinary action pursuant to Rule 3(f) of the Uniform Rules and Regulations set forth in Article 40 of the Central-Southern Supplemental Agreement". Complaint Exhibit F, last paragraph. Article 40, Rule 3(f) of the Agreement subjects employees to discharge for: "Participating in, instigating and/or perpetuating an unauthorized work stoppage, walkout or slow down". In the same manner Allied's request for an injunction, at paragraph (2), page 9 of the Complaint, seeks an order to compel "Defendant Union and its members to cease threatened strikes, work stoppages, tie ups or curtailment at Plaintiff's Warren, Michigan operations to enforce [Local 299's] position on its pending dispute with a third party…". As such, Allied alleges that the so-called "sympathy strike" is in support of Local 299's "area standards" dispute with third parties and therefore violates the NMATA no-strike provision.

**ARGUMENT**

    **Standards for Motions to Dismiss**

    A.    Rule 12(b)(1) Dismissal[5]

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) where the court lacks subject matter jurisdiction over a plaintiff's claim. Fed. R. Civ. P. 12(b)(1). In reviewing a Rule 12(b)(1) motion, the court must accept all material allegations as true and construe them in a light most favorable to the non-moving party. Id. Courts should review Rule 12(b)(1) challenges before others. Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 450 (6th Cir. 1988). A district court may sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the allegations of the complaint are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999).

    B.    Rule 12(b)(6) Dismissal

In assessing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must treat all well-pleaded allegations in the complaint as true. Kostrzewa v. City of Troy, 247 F.3d 633, 638 (6th Cir. 2001). Dismissal is only proper if it, on the pleadings themselves, the plaintiff does not have a "reasonably founded hope" of making his or her case. Bell Atlantic v. Twombley, 550 U.S. 544, 564, 127 S. Ct. 1955, 1970, 167 L. Ed. 2d 929 (2007).

---

[5] In considering whether to dismiss a Complaint under Fed. R. Civ. P. 12(b)(1) due to lack of subject matter jurisdiction, the plaintiff bears the burden of proving the existence of subject matter jurisdiction. Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1248 (6th Cir. 1996); Hawaiian Village Computer, Inc. v. Print Mgmt. Ptnrs, Inc., 501 F. Supp. 2d 951, 952-953 (E.D. Mich. 2007). If the Motion attacks the assertion of subject matter jurisdiction raised in the face of the complaint, the Court accepts the Complaint's allegations as true and construes them in the light most favorable to the non-moving party. United States v. A.D. Roe Co., Inc., 186 F.3d 717, 721-22 (6th Cir.1999).

**Summary of Argument**

> **Because the instant Allied Complaint requesting solely injunctive relief, fairly read, admits that the so-called "sympathy strike" is the result of Local 299's "area standards" labor dispute with other Employers, and the "area standards" dispute itself is not arbitrable under the NMATA, the Norris-LaGuardia Act divests the Court of jurisdiction and Allied's Complaint fails to state a claim upon which relief may be granted.**

The Norris-LaGuardia Act provides that "[n]o court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of [the Act]." 29 U.S.C. § 101. Specifically, the NLG Act bars federal courts from issuing injunctions that would prohibit persons participating or interested in a labor dispute from: "(e) [g]iving publicity to the existence of . . . any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence," and "(f) [a]ssembling peaceably to act or to organize to act in promotion of their interests in a labor dispute." 29 U.S.C. §§ 104(e), (f).

A case involves or grows out of a labor dispute when the case "involves persons who are engaged in the same industry, trade, craft or occupation," including disputes between "one or more employers or associations of employers and one or more employees or associations of employees." 29 U.S.C. § 113(a). A labor dispute under the NLG Act includes "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). See also, <u>Marine Cooks & Stewards v. Panama S.S. Co.</u>, 362 U.S. 365, 369, 80 S. Ct. 779, 4 L. Ed. 2d 797 (1960) ("The [NLG Act]

language is broad because Congress was intent upon taking the federal courts out of the labor injunction business except in very limited circumstances . . .")[6]; Corporate Printing Co., v. New York Typographical Union No. 6, 555 F.2d 18, 20 (2nd Cir. 1977) (stating that the term labor dispute is "broadly defined"); Pulte Homes v. Laborers' International Union of North America, Case No. 2:09-cv-13638-LPZ, U.S. District Court, E.D. Mich., Opinion and Order of the Honorable Lawrence P. Zatkoff, U.S.D.J., filed September 24, 2009, reported at 2009 U.S. Dist. LEXIS 87955.

Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, significantly curtails a district court's ability to issue an injunction against labor strikes and work stoppages. The Sixth Circuit has recognized that the "anti-injunction provisions of the Norris-LaGuardia Act were intended to protect workers in the exercise of organized economic power." Allied Sys. Ltd. v. Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm., Local Union 327, 179 F.3d 982, 986 (6th Cir. 1999)(hereinafter referenced as "Allied v. Teamsters"), citing Crowe & Assocs., Inc. v. Bricklayers & Masons Union Local No. 2 (In re Crowe & Assocs., Inc.), 713 F.2d 211, 216 (6th Cir. 1983) (per curiam). As the Supreme Court stated: "Congress acted to prevent injunctions of the federal courts from upsetting the natural interplay of the competing economic forces of labor and capital." Brotherhood of R.R. Trainmen v. Chicago River, 353 U.S. 30, 39, 1 L. Ed. 2d 622, 77 S. Ct. 635 (1957).

The Supreme Court first addressed the inherent conflict between § 301 of the LMRA and § 4 of the Norris-LaGuardia Act in Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 26 L. Ed. 2d 199, 90 S. Ct. 1583 (1970). The Court in Boys Markets reconciled § 301 of the LMRA

---

[6] Even allegations of illegality of a picket line are insufficient to provide U.S. District Court jurisdiction. See Lauf v. E.G. Shinner & Co., 303 U.S. 323, 58 S. Ct. 578, 82 L. Ed. 872 (1938) (holding that an attempt by a labor union to coerce an employer to require its employees to unionize by means of picketing constituted a labor dispute under the NLG Act even though none of the employees belonged to the labor union).

and the anti-injunction provisions of the Norris-LaGuardia Act by creating a "narrow" exception to the Norris-LaGuardia Act: federal courts are permitted to enjoin strikes only when such action would enforce terms of a collective bargaining agreement specifically negotiated by the parties where the causes or the issues underlying the strike are subject to the grievance and arbitration procedures agreed to by the parties. See id. at 253-54.

When seeking a Boys Markets injunction, the employer has the burden of showing that it is entitled to such an injunction. Allied v. Teamsters, 179 F.3d at 987; In re Crowe & Assocs., Inc., 713 F.2d at 215; Plain Dealer Publ'g Co. v. Cleveland Typographical. Union No. 53, 520 F.2d 1220, 1227-28 (6th Cir. 1975); Parade Publications, Inc. v. Philadelphia Mailers Union No. 14, 459 F.2d 369, 373 (3d Cir. 1972). The Sixth Circuit has also articulated the analysis to be followed when determining whether a party is entitled to an injunction against a labor strike or work stoppage within the meaning of Boys Markets:

> First, the controversy must involve or grow out of a labor dispute within the meaning of Section 4 of the [Norris-LaGuardia] Act. Second, **a full evidentiary hearing must be held.** Third, the court must find that **the dispute underlying the controversy** is subject to binding arbitration under the terms of the collective bargaining agreement. Finally, the traditional equitable bases for injunctive relief must be met. A court has jurisdiction to issue an injunction only where all four of the above steps have been completed and satisfied.(Emphasis supplied).

Allied v. Teamsters, 179 F.3d at 987, citing International Union United Auto. Workers v. Lester Eng'g Co., 718 F.2d 818, 822 (6th Cir. 1983). At the hearing, required by 29 USCS § 107, plaintiff is required to offer evidence in support of allegations set forth in complaint and defendants afforded opportunity to offer testimony in opposition thereto. Detroit & Toledo Shore Line Railroad Co. v. Brotherhood of Locomotive Firemen and Engineers, 357 F.2d 152, 153-54 (6th Cir. 1966).

Since Boys Markets, the Supreme Court has emphasized that the anti-injunction provisions of the Norris-LaGuardia Act are to be given a "broad interpretation" and that the Boys Markets exception is to be recognized "only in limited situations where necessary to accommodate the Act to specific federal legislation or paramount congressional policy." Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n, 457 U.S. 702, 708, 73 L. Ed. 2d 327, 102 S. Ct. 2672 (1982). A congressional policy favoring arbitration "does not reflect a congressional policy favoring the issuance of anti-strike injunctions pending arbitration." Waller Bros. Stone Co. v. United Steelworkers, 620 F.2d 132, 135 (6th Cir. 1980).

This Court has the benefit of the judicial analysis of other opinions in Sixth Circuit and District Court cases under the NGA Act which have reviewed many of the very same provisions the NMATA. Allied's assertion in this Complaint that it is entitled to an injunction on the basis that Article 7, Section 7(a) calls for arbitration of all disputes over interpretation of the National Agreement's provisions was deemed "unavailing" by the Sixth Circuit panel in Allied v. Teamsters, 179 F. 3d at 988. The Supreme Court has made clear that the mere arbitrability of the issue of whether a strike violates a no-strike provision does not entitle the employer to a Boys Markets injunction. Buffalo Forge Co. v. United Steelworkers of America, 428 U.S. 397, 409-10, 49 L. Ed. 2d 1022, 96 S. Ct. 3141 (1976). The Sixth Circuit explained the point in Waller Brothers, stating: "the fact that a strike may arguably violate the provisions of the collective bargaining agreement, and may thus present an arbitrable issue does not justify the issuance of a Boys Markets injunction." Waller Bros., 620 F.2d at 136; see also Complete Auto Transit, Inc. v. Reis, 614 F.2d 1110, 1113 (6th Cir. 1980), aff'd 451 U.S. 401, 68 L. Ed. 2d 248, 101 S. Ct. 1836 (1981).

In Complete Auto Transit, Inc. v. Reis, 614 F.2d at 1113, a case originating in this district under the provisions of the NMATA, the Sixth Circuit explained the Buffalo Forge decision which involved a classic sympathy strike.

> "Members of a union who had no dispute with their employer refused to cross the picket lines of a sister union which was engaged in a strike against the same employer following failure to negotiate a collective bargaining agreement. The union of the sympathy strikers did have an existing collective bargaining agreement with the employer. This agreement contained a no-strike clause and a provision for compulsory binding arbitration. The Supreme Court affirmed denial of the employer's request for an injunction to halt the sympathy strike upon a finding that "Boys Markets plainly does not control this case." [Buffalo Forge] 428 U.S. at 407. The question whether the sympathy strike was legal under the agreement was subject to arbitration, the Court held. The employer could obtain a court order requiring the union to arbitrate this issue if it refused to do so on demand. Further, if the strike were held illegal by an arbitrator the federal statutes would permit issuance of an injunction to enforce the arbitral decision. However, since the sympathy strike was not over any dispute subject to the arbitration provisions of the agreement the employer was not entitled to enjoin it.
>
> The Court reasoned that Boys Markets was designed solely to further the national policy favoring settlement of labor disputes by means agreed upon by the parties. This policy favoring arbitration was not in peril in Buffalo Forge because neither the causes nor the issues underlying the sympathy strike were subject to the grievance and arbitration procedures agreed to by the parties. [Buffalo Forge ] 428 U.S. at 407-8. Buffalo Forge emphasizes that the mere fact that a strike may be illegal is not sufficient to empower a federal court to enjoin it. Norris-LaGuardia withholds jurisdiction to grant an injunction unless the case comes within the "narrow" exception established in Boys Markets. Id. at 402-3. Further, **the fact that the legality of a strike may itself present an arbitrable question does not empower a federal court to enjoin the strike. Only if the underlying dispute the one "over" which the workers are striking is arbitrable, will the Boys Markets exception permit a federal court to enjoin a strike.** (Emphasis supplied).

Similar denials of labor dispute strike injunctions were rendered in Maiers Motor Freight Co. v. Teamsters Truck Drivers Local Union No. 299, 113 L.R.R.M. (BNA) 2822 (E.D. Mich. Dec. 8, 1982)(Judge Boyle); E. and L. Transport Company v. Teamsters Local 299, Case No. 2:98-cv-72780-GER, U.S. District Court, E.D. Mich., Opinion and Order of the Honorable Gerald E Rosen, U.S.D.J., filed July 16, 1998; Automobile Transport, Inc. v. Ferdnance, 420 F.

Supp. 75 (E.D. Mich. 1976)(strike injunction denied under NMATA where dispute which caused picketing was not subject to arbitration).

That a collective bargaining agreement calls for arbitration over disputes regarding construction of the agreement is hardly unusual. See, e.g., National Wrecking Co. v. Kumerow, 606 F. Supp. 374, 375 (N.D. Ill. 1985) (denying injunction even though agreement provided "for binding arbitration of disputes and grievances with respect to the application and construction of the agreement"); National Mine Serv. Co. v. United Steelworkers., 385 F. Supp. 856, 859 (N.D. W.Va. 1974) (denying injunction despite broad scope of grievance procedure).[7]

The Supreme Court's decision in Jacksonville Bulk Terminals supports the view that a federal court must constrain itself solely to the arbitrability of the underlying dispute in determining whether to issue a Boys Markets injunction. In that case, the workers refused to handle any cargo bound to or coming from the former Soviet Union in protest of the 1979 invasion of Afghanistan. The Court held that the underlying dispute between the parties was a political dispute "plainly not arbitrable under the collective bargaining agreement." Jacksonville Bulk Terminals, 457 U.S. at 721. The Court reached this conclusion despite the fact that the collective bargaining agreement in that case contained "both a broad no-strike clause and a provision requiring the resolution of all disputes through a grievance procedure, ending in arbitration." Id. at 706 (emphasis added). If the collective bargaining agreement in Jacksonville Bulk Terminals was insufficient to entitle the employer to a Boys Markets injunction, then the same must be said for Article 7, Section 7(a) in this case. The instant Allied Complaint clearly admits that the "underlying dispute" is Local 299's area standards dispute with other employers.

---

[7] The Sixth Circuit has cautioned that: "it unwise to tread beyond the core underlying dispute between the parties, as such determinations 'would embroil the courts in endless circular reasoning trying to decide where arbitrability starts and where it stops.' Comment, Labor Injunctions Pending Arbitration: A Proposal to Amend Norris-LaGuardia, 63 TUL. L. REV. 1681, 1694 n.85 (1989)", Allied v. Teamsters, 179 F.3d at 988.

The Sixth Circuit has held that <u>Boys Markets</u> injunctions are to be granted only when "it clearly appears to the trial judge that the dispute which underlies the strike is subject to a no-strike obligation." <u>Waller Bros.</u>, 620 F.2d at 137; accord <u>Matson Plastering Co., Inc. v. Operative Plasterers & Cement Mixers Int'l Ass'n, Etc.</u>, 633 F.2d 1307, 1308 (9th Cir. 1980) (Boys Market injunction proper only when a "clear" and "undisputed" contractual duty to arbitrate the underlying dispute exists); <u>Allied v. Teamsters</u>, 179 F.3d at 989 ("so long as the right to strike is interrelated with an ambiguity in a collective bargaining agreement, a federal court is without jurisdiction to issue a <u>Boys Market</u> injunction").

**NMATA, Article 8, Protection of Rights, Section 1, Picket Lines**[8]

The NMATA "ambiguity" Allied seeks to manipulate in this case is whether Article 8, entitled, "Protection of Rights", Section 1, entitled "Picket Line", means what it says when the parties agreed: "**It shall not be a violation of this Agreement**, and it shall not be cause for discharge, disciplinary action or permanent replacement, **in the event an employee refuses to enter upon any property** involved in a primary labor dispute, **or refuses to go through or work beyond** any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's place of business." (Emphasis supplied). The Complaint tries to parse the meanings of the phrases "any property" and "refuses to go through or work beyond" in an attempt to create a dispute under the NMATA. However, a reasonable reading of Article 8, "Protection of Rights", Section 1, "Picket Line", shows that it is in fact an express reservation in a collective bargaining agreement of a right to strike [over third

---

[8] The express purpose of this Article is to provide NMATA employees the fullest extent of rights for concerted activity. <u>Local Union 1395, International Brotherhood of Electrical Workers v. NLRB</u>, 797 F.2d 1027, 1029 (D.C. Cir.1986)(Under the National Labor Relations Act, 29 U.S.C. § 157, employees enjoy the right to observe lawful picket lines that they encounter in the course of their duties).

15

party disputes] negating any inference that the court retains the power to issue an injunction. Waller Bros. Stone Co. v. United Steelworkers of America, 620 F.2d at 133[9]:

But this attempt, like the plaintiff's arguments in Allied v. Teamsters, 179 F. 3d at 988, and Complete Auto Transit, Inc. v. Reis, 614 F.2d at 1113, is at bottom a dispute about whether the "sympathy strike" in support of Local 299's "area standards" campaign is a violation of the Article 7, Section 1, no strike clause. Allied's November 4, 2009 letter claiming to file an Employer "grievance", Complaint ¶ 14, Complaint Exhibit F, is simply a continuation of its attempts to show that any honoring of Local 299 picket lines by employees violated the no-strike clause. If necessary, evidence will show that the parties have no history of an Employer grievance under Article 8, Section 5, but the fact that such a grievance expressly is to be resolved by submission "directly to the National Joint Arbitration Committee … **any other provision of this Agreement to the contrary notwithstanding**", Allied's final argument for injunctive relief is still unavailing under long-standing precedent.[10]

Clear precedent in this Circuit and District in cases where Allied itself was a party applying the same language of the NMATA to economic strikes confirms that this Court lacks jurisdiction under the Norris-LaGuardia Act to grant Allied the relief it requests. Allied does not have a "reasonably founded hope" of making its case. Bell Atlantic v. Twombley, 550 U.S. at 564. Allied v. Teamsters, 179 F.3d at 989 ("so long as the right to strike is interrelated with an

---

[9] See, also, Standard Food Products Corp. v. Brandenburg, 436 F.2d 964, 966 (2d Cir. 1970)("The trial judge to whom under these circumstances an application for an injunction is made has no power to decide the merits of the controversy. The parties have agreed that such a controversy is to be left to the arbitrament of economic weapons. The court has no power to disregard their contract and force other methods upon them").

[10] See, Teamsters v. Yellow Transit Freight Lines, 370 U.S. 711, 8 L. Ed. 2d 792, 82 S. Ct. 1293 (1962), the Supreme Court held that a no-strike injunction had been issued in violation of the Norris-LaGuardia Act because no neutral arbitration of the dispute was mandated under the agreement. See, American Tel. & Tel. Co. v. Communications Workers of America, 985 F.2d 855 (6th Cir.1993)(same).

ambiguity in a collective bargaining agreement, a federal court is without jurisdiction to issue a <u>Boys Market</u> injunction").

**CONCLUSION**

For the foregoing reasons and authority, Defendants Local Union No. 299 and Kevin D. Moore pray that this action be dismissed with prejudice, with an award of attorneys' fees and costs.

TRUCK DRIVERS LOCAL UNION NO. 299,
And KEVIN D. MOORE, Defendants,
By Counsel:

/s/ *James F. Wallington*
James F. Wallington
BAPTISTE & WILDER, P.C.
1150 Connecticut Avenue, N.W., Suite 500
Washington, DC 20036
Telephone: (202) 223-0723
Fax: (202) 223-9677
Email: jwallington@bapwild.com

And

Matthew Broderick (P47403)
30685 Barrington, Suite 130
Madison Heights, MI 48071
Telephone: 248-588-2297
Fax: 248-588-6075
Email: staff@jaffelaw.net

Co-Counsel for Defendant
Truck Drivers Local Union No. 299, IBT

**Certificate of Service**

    I hereby certify that on this 6th day of November, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Counsel for Plaintiff Janet E. Lanyon and Kenneth W. Zatkoff, Dean & Fulkerson, P.C., 801 W. Big Beaver Rd., Ste. 500, Troy, MI 48084.


                                        */s/ James F. Wallington*