UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIED SYSTEMS, LTD. (L.P.)                                  Civil Action No. 2:09-cv-14365
                                                             Hon.
        Plaintiff,

v

TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
& HELPERS LOCAL UNION NO. 299,
KEVIN D. MOORE, its officers, agents,
employees and members

        Defendants
_____
JANET E. LANYON (P34844)
KENNETH W. ZATKOFF (P40601)
DEAN & FULKERSON, P.C.
Attorney for Plaintiff
801 W. Big Beaver Rd., Ste. 500
Troy, MI 48084
(248) 362-1300
_____

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff ALLIED SYSTEMS, LTD. (L.P.) respectfully asks the Court for an order restraining and enjoining the Defendant Union from strike, work stoppage and/or other tie-up of equipment in violation of the collective bargaining agreement for the reasons set forth in the Verified Complaint and the Brief in support of this motion. There was a conference between counsel for the parties in which the nature of this motion was explained and concurrence was requested, however, such concurrence was denied.

Respectfully submitted,

**DEAN & FULKERSON, P.C.**


By:   s/Janet E. Lanyon
      Janet E. Lanyon (P34844)
      Kenneth W. Zatkoff (P40601)
801 West Big Beaver Rd., Fifth Floor
Troy, Michigan 48084
(248) 362-1300
Facsimile (248) 362-1358
jlanyon@dflaw.com

Attorneys for Plaintiff
Allied Systems, Ltd. (L.P.)

Dated: November 6, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIED SYSTEMS, LTD.   (L.P.)                              Civil Action No. 2:09-cv-14365

                                                            Hon.

        Plaintiff,

v

TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
& HELPERS LOCAL UNION NO. 299,
KEVIN D. MOORE, its officers, agents,
employees and members

        Defendants.
_____
JANET E. LANYON (P34844)
KENNETH W. ZATKOFF (P40601)
DEAN & FULKERSON, P.C.
Attorney for Plaintiff
801 W. Big Beaver Rd., Ste. 500
Troy, MI  48084
(248) 362-1300

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

I. <u>INTRODUCTION</u> ............................................................................................... 1

II. <u>STATEMENT OF FACTS</u> ................................................................................. 2

III. <u>ARGUMENT</u> ...................................................................................................... 2

    A. THIS COURT HAS JURISDICTION PURSUANT TO SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT, 29 USC, SECTION 185, TO ENJOIN A WORK STOPPAGE AND/OR PROSPECTIVE WORK STOPPAGE INVOLVING AN ARBITRABLE DISPUTE IN A CASE WHERE THE COLLECTIVE BARGAINING AGREEMENT CONTAINS A NO-STRIKE CLAUSE ............................................................................. 2

    B. THE UNION'S STRIKE IS IN DIRECT VIOLATION OF THE CURRENT COLLECTIVE BARGAINING AGREEMENT ............................. 5

        1. The Current Collective Bargaining Agreement Contains A Presently Applicable No-Strike Provision And Arbitration Provision ................................................... 5

        2. The Underlying Dispute Arises Under The Collective Bargaining Agreement And Is Arbitrable Under The Broad Arbitration Provision. Economic Sanctions Are Therefore Prohibited Under The No-Strike Clause ......................................... 6

        3. Breaches Of The No-Strike Clause Began On November 2, 2009, And Have Continued ............................................................................................................ 7

        4. The Breach Of The No-Strike Clause Has Caused And Will Continue to Cause Plaintiff Irreparable Injury And An Injunction Is Warranted Under Ordinary Principles Of Equity ............................................................................................ 7

        5. The Plaintiff Will Suffer More From The Denial Of An Injunction Than Will The Defendant Union From Its Issuance ....................................................... 8

        6. The Work Stoppage Involves Disputes That Both Parties Are Contractually Bound To Arbitrate ............................................................................................... 9

IV. <u>CONCLUSION</u> ................................................................................................. 12

## TABLE OF AUTHORITIES

Boys Market Inc. v. Retail Clerks Union Local 770, 398 US 235 (1970) ........ 2, 3, 4, 6, 9, 10, 11

Buffalo Forge Co. v. United Steelworkers of America, 428 U.S. 397 (1976) ...................... 10, 11

Central Appalachian Coal Co. v. U.M.W., 376 F. Supp. 914 (S.D. W. Va. 1974) ...................... 8

Gateway Coal Co. v. United Mineworkers of America, 414 U.S. 368 (1974) ............................. 8

General Bldg. Contractors Ass'n. v. Operating Engrs. Local 542,
371 F. Supp. 1130 (E.D. Pa. 1974) ................................................................................................ 8

Jacksonville Bulk Terminals v. Longshoremen, 457 U.S. 702 (1982) ......................................... 6

Jacksonville Maritime Association v. Int'l. Longshoremen's Association, 571 F.2d 319 (5th Cir. 1978) ................................................................................................................................................ 8

Kauai Electric Co. v. IBEW, Local Union 1260, 1971 WL 857, 79 LRRM 2838 (DC Hawaii, 1971) ................................................................................................................................................ 9

Parade Publications, Inc. v. Philadelphia Mailers Union, 459 F.2d 369 (3rd Cir. 1972) ............... 6

Ryder Trucklines v. Local 480, 727 F.2d 594 (6th. Cir. 1984) ................................................... 11

Sinclair Refining Co. v. Atkinson, 370 U.S. 195 (1962 ................................................................ 2

Southern Ohio Coal Co. v. United Mine Workers of America, 551 F.2d 695 (1977) ............. 5, 6

Southern Ohio Coal Co. v. United Mine Workers, 551 F.2d 695 (6th Cir. 1977) ....................... 6

Textile Workers of America v. Lincoln Mills, 353 U.S. 448 (1957) ......................................... 3,9

Textile Workers Union v. Lincoln Mills, 353 U S. 448 (1957). .................................................... 3

UAW v. Lester Engineering Co., 718 F.2d 818 (6th Cir. 1983)................................................... 11

United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960) ...................... 3, 9

United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960) ........... 3

United Steelworkers of America v. Warrior & Gulf Navigation Co.,
363 U.S. 574 (1960) ................................................................................................................... 3,9

United States v Cunningham, 599 F.2d 120 (6th Cir.1979)......................................................... 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIED SYSTEMS, LTD. (L.P.)                                              Civil Action No.
                                                                                    .:
                                                                    Hon.
       Plaintiff,

v

TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
& HELPERS LOCAL UNION NO. 299,
KEVIN D. MOORE, its officers, agents,
employees and members

       Defendants.
_____
JANET E. LANYON (P34844)
KENNETH W. ZATKOFF (P40601)
DEAN & FULKERSON, P.C.
Attorney for Plaintiff
801 W. Big Beaver Rd., Ste. 500
Troy, MI 48084
(248) 362-1300
_____

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

   This brief is submitted by Plaintiff, Allied Systems, Ltd. (L.P.) ("Allied") in support of its application for a temporary restraining order and preliminary injunction to enjoin strike activity by the Defendants who seek to improperly enmesh Plaintiff in an economic dispute they allegedly have with Vascor, Ltd. (Vascor) and Adecco Services ("Addeco") in Warren, Michigan. Allied is a separate and distinct business from Vascor and from Adecco, without common ownership, management or control. Defendants are engaged in picketing at 20740 Mound Road, Warren, Michigan, a location where Vascor and Addeco enter the Chrysler Group, LLC "Dodge City"

1

facility to perform work, and which is approximately ½ mile away from the Allied's sole "Dodge City" entrance at 21500 Mound Road. The picketing has, however, caused the Allied employees represented by Defendant Teamsters Local 299 to refuse to enter "Dodge City" using Allied's entrance, thereby preventing Allied from performing its obligation to Chrysler Group LLC ("Chrysler").

## II.  STATEMENT OF FACTS

The facts of this matter are described in detail in the the Verified Complaint. Plaintiff respectfully relies on that submission here.

## III.  ARGUMENT

**A.  THIS COURT HAS JURISDICTION PURSUANT TO SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT, 29 USC SECTION 185, TO ENJOIN A WORK STOPPAGE AND/OR PROSPECTIVE WORK STOPPAGE INVOLVING AN ARBITRABLE DISPUTE IN A CASE WHERE THE COLLECTIVE BARGAINING AGREEMENT CONTAINS A NO-STRIKE CLAUSE.**

In <u>Boys Market, Inc. v. Retail Clerks Union, Local 770</u>, 398 U.S. 235 (1970), the United States Supreme Court held that the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. Section 104, did not preclude a United States District Court from enjoining a strike in breach of a no-strike obligation under a collective bargaining agreement. In so doing, the Court recognized the exceedingly important public interest in guaranteeing that the parties to a labor agreement keep their promise to peacefully settle disputes arising thereunder. The Court overruled its previous decision in <u>Sinclair Refining Co. v. Atkinson</u>, 370 U.S. 195 (1962) because:

> Sinclair stands as a significant departure from our otherwise consistent emphasis upon the congressional policy to promote the peaceful settlement of labor disputes through arbitration . . .

> See, e.g., United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); Textile Workers Union v. Lincoln Mills, 353 U S. 448 (1957).

The underlying statutory basis for the Court's jurisdiction is Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185 (LMRA). Section 301 reads in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount of the controversy or without regard to the citizenship of the parties.

Boys Markets holds that this jurisdiction encompasses the right to enjoin strikes in violation of a contractual no-strike clause and involving a dispute subject to mandatory arbitration.

The policy basis for the Boys Markets decision was expressed by the Court in the following terms:

> As we have previously indicated, a no-strike obligation, express or implied, is the quid pro quo for an undertaking by the employer to submit grievance disputes to the process of arbitration. See Textile Workers Union v. Lincoln Mills, supra, at 455. Any incentive for employers to enter into such an arrangement is necessarily dissipated if the principal and most expeditious method by which the no-strike obligation can be enforced is eliminated. While it is of course, true, as respondent contends, that other avenues of redress, such as an action for damages, would remain open to an aggrieved employer, an award of damages after a dispute has been settled is no substitute for an immediate halt to an illegal strike. Furthermore, an action for damages prosecuted during or after a labor dispute would only tend to aggravate industrial strife and delay an early resolution of the difficulties between employer and union. 398 U.S. at 248.

3

This same policy supports the Plaintiff's request for an injunction in the instant case. In agreeing to the broad arbitration clause, Defendant Teamsters Local Union No. 299 ("Union" or "Local 299") and its members agreed not to strike, slow-down or walk out during the term of this contract. If the Plaintiff cannot ensure adherence to the no-strike provision, it would have no incentive to agree to arbitration. Without the prospect of specific performance, the no-strike provision is useless.

Since the Boys Markets decision effected an accommodation between Section 301 of the LMRA, supra, and the anti-injunction provisions of the Norris-LaGuardia Act, supra, the Court's holding authorized the issuance of an injunction upon the satisfaction of certain conditions.

> We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance. The dissenting opinion in Sinclair suggested the following principles for the guidance of the district courts in determining whether to grant injunctive relief--principles that we now adopt:
>
> A District Court entertaining an action under Section 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity--whether breaches are occurring and will continue, or have caused or will cause irreparable injury to the employer; and whether the employer will suffer- more from the denial of an injunction than will the union from its issuance. 370 U.S. at 254.

The Sixth Circuit, in <u>Southern Ohio Coal Co. v. United Mine Workers of America,</u> 551 F.2d 695 (1977) has followed and applied the criteria prescribed by the Supreme Court in <u>Boys Market</u>. The Court in <u>Southern Ohio Coal Co.</u> stated that there is nothing in <u>Boys Market</u> that is inconsistent with a grant of prospective injunctive relief in the exercise of Section 301 jurisdiction. 551 F.2d at 708. The Court reasoned that:

> Once a court has found that a union is engaged in a continuing practice of striking over arbitrable disputes and the Boys Market guidelines are satisfied, we believe that the ensuing injunction may be extended to encompass future strikes over disputes similar to those which caused the strikes in the past. To unduly restrict the scope of injunctive relief deprives the employer of an 'immediate, effective remedy' and defeats the national policy of fostering arbitration. 551 F.2d at 709.

It is the Plaintiff's contention that the facts of this case as they have been set out in the Verified Complaint meet each of the criteria set forth in <u>Boys Market.</u>

**B.   THE UNION'S STRIKE IS IN DIRECT VIOLATION OF THE CURRENT COLLECTIVE BARGAINING AGREEMENT.**

**1.   The Current Collective Bargaining Agreement Contains A Presently Applicable No-Strike Provision And Arbitration Provision.**

Article 7, Section 1 of the agreement provides in pertinent part that:

> The parties agree that all grievances and questions of interpretation arising from the provisions of this Agreement shall be submitted to the grievance procedure for determination.

> The Unions and the Employers agree that there shall be no strike, tie-up of equipment, slowdown or walkout on the part of the employees, nor shall the Employer use any method of lockout or legal proceeding without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise.

Article 7, Section 13 states:

> Unless otherwise expressly provided in this Agreement any and all disputes, including interpretation of contract provisions, arising under, out of, in

5

connection with, or in relation to this collective bargaining agreement, shall be subject to the grievance procedure of this Agreement.

The language of Article 7, Section 1 quoted above establishes an absolute prohibition on strikes, slowdowns and walkouts during the term of the contract. The work stoppage by Defendants which forms the basis of the Verified Complaint, is covered by this provision. Article 7, Sections 1 and 13 also establish a broad, all-encompassing arbitration provision as indicated by the aforementioned language.

2.   **The Underlying Dispute Arises Under The Collective Bargaining Agreement And Is Arbitrable Under The Broad Arbitration Provision. Economic Sanctions Are Therefore Prohibited Under The No-Strike Clause.**

The reason asserted by the Union for preventing Allied from meeting its obligations to Chrysler is that it is engaged in a primary "area standards" dispute with Vascor and Adecco and that the Allied employees represented by the Union are not required to "work beyond" the Union's picket line. Yet, the Union acknowledges that it is not engaged in any primary labor dispute with Allied and the picket line established by the Union is ½ mile away from the entrance used by Allied employees to pick up vehicles from Dodge City for delivery. Any questions concerning that work or the legitimacy of the picketing are subject to the grievance procedure of the collective bargaining agreement. Therefore, this Court may grant injunctive relief under Boys Market, supra; Jacksonville Bulk Terminals v.Longshoremen, 457 U.S. 702, 709 (1982).

The meaning and application of collective bargaining agreements are arbitrable. Southern Ohio Coal Co. v. United Mine Workers, 551 F.2d 695 (6th Cir. 1977). Moreover, there is a strong presumption of arbitrability in accordance with the public policy in favor of industrial harmony and doubts should be resolved in favor of arbitrability. Parade Publications, Inc. v. Philadelphia Mailers Union, 459 F.2d 369 (3rd Cir. 1972).

6

### 3. Breaches Of The No-Strike Clause Began On November 2, 2009, And Have Continued.

As stated in the Verified Complaint, Defendant Union and its members commenced a work stoppage and tie-up of equipment in violation of Article 7. Notwithstanding being advised of the Defendant Union's right to seek an interpretation of any contract language through the grievance machinery, Defendant Union and its members have ignored the agreement and have continued the aforesaid work stoppage and tie-up of equipment. The work stoppage and tie-up of equipment in violation of the contract continues.

### 4. The Breach Of The No-Strike Clause Has Caused And Will Continue to Cause Plaintiff Irreparable Injury And An Injunction Is Warranted Under Ordinary Principles Of Equity.

As set forth in the Verified Complaint, Plaintiff's business of shipping motor vehicles from the Dodge City facility has been curtailed and will continue to be curtailed by the work stoppage. Chrysler has directed other carriers to retrieve the motor vehicles which Plaintiff's employees have refused to transport and has informed Plaintiff that, if it cannot transport the vehicles Chrysler will find others who can do so. Plaintiff Allied will lose thousands of dollars in the event the Defendant Union and its members continue to engage in their work stoppage and tie-up of equipment and potentially lose its Chrysler Dodge City traffic. Allied's inability to transport Chrysler vehicles out of the Dodge City facility has harmed its reputation with Chrysler, an important customer.

Chrysler cannot afford to have and will not allow the delivery of its vehicles to be disrupted. Plaintiff has suffered and will continue to suffer loss of customer goodwill and damage to its business reputation because of its inability to perform its business obligations. Equity dictates that Defendant Union and its members should not be allowed to breach the no-strike provision of the

7

contract with such irreparable results. The injury to Plaintiff's business reputation, the loss of goodwill, and the actual and potential loss of business are incapable of being measured in terms of monetary damages and are irreparable in nature. See, e.g., Jacksonville Maritime Association v. Int'l. Longshoremen's Association, 571 F.2d 319 (5th Cir. 1978); Central Appalachian Coal Co. v. U.M.W., 376 F. Supp. 914 (S.D. W. Va. 1974); General Bldg. Contractors Ass'n. v. Operating Engrs. Local 542, 371 F. Supp. 1130 (E.D. Pa. 1974). Only an injunction can ensure the uninterrupted operation contemplated by the contract.

The Supreme Court in Boys Market recognized that, in reality, there is no adequate legal remedy to enforce arbitration and no-strike clauses. 398 U.S. at 248. Plaintiff has clearly stated to Local 299 its willingness to submit to the applicable contractual grievance procedure, pursuant to the terms of the collective bargaining agreement, any and all questions concerning any dispute arising with Defendant Union. See, Gateway Coal Co. v. United Mineworkers of America, 414 U.S. 368 (1974).

     **5.**    **The Plaintiff Will Suffer More From The Denial Of An Injunction Than Will The Defendant Union From Its Issuance.**

The irreparable injury that will accrue to Plaintiff Allied by a denial of this request for an injunction has been set forth specifically in the preceding paragraphs and in the Verified Complaint. The placement in the collective bargaining agreement of the no-strike clause and broad arbitration clause is not without significance. The commitments are reciprocal. Neither has any meaning if the Defendant Union and its members and officers are free to strike or to engage in a cessation of work when all parties have bound themselves to resolve all disputes or controversies by means of the grievance and arbitration procedure. Defendants have done precisely what they have bound themselves not to do. This, in turn, denies to the Plaintiff the primary benefit which it bargained for

8

and secured under the collective bargaining agreement. As stated by the Supreme Court, in Textile Workers of America v. Lincoln Mills, 353 U.S. 448 (1957),

> (T)he chief advantage which an employer can reasonably expect from a collective (bargaining) agreement is assurance of uninterrupted operation during the term of the agreement. 353 U.S. at 448.

If the requested relief is ordered by the Court, Defendants will not suffer any harm inasmuch as they are being asked to follow the law and perform their duties as required by the collective bargaining agreement. Accord, Kauai Electric Co. v. IBEW, Local Union 1260, 1971 WL 857, 79 LRRM 2838 (DC Hawaii, 1971). The respective equities in this case clearly weigh in favor of the relief requested by the Plaintiff.

    6.    **The Work Stoppage Involve s Disputes That Both Parties Are Contractually Bound To Arbitrate.**

        a.    The work stoppage by the Defendants is over a dispute that both the Union and Plaintiff are manifestly contractually bound to arbitrate.

Article 7, Section 1, set forth above, requires that any dispute between the parties is subject to the grievance procedure. Clearly, regardless of how the Defendants characterize their dispute, the underlying dispute is arbitrable under the provisions of the collective bargaining agreement.

Indeed, national labor policy, as enunciated by the courts, favors the peaceful resolution of labor disputes through arbitration. In the Steelworkers Trilogy, the Supreme Court enunciated the presumption of arbitrability in labor disputes to give effect to the no-strike and mandatory arbitration clauses found in collective bargaining agreements. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960) ; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960) ; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960). In Warrior & Gulf, the Supreme Court stated,

9

An Order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. 363 U.S. at 582-83.

In Boys Markets, supra, the Supreme Court extended the policy set forth in the Steelworkers Trilogy. The Court therein stated that Section 4 of the Norris-LaGuardia Act must be accommodated to Section 301(a) of the LMRA and the purposes of arbitration. To effect such an accommodation, the Court held that Section 301 authorized injunctions against strikes which were in violation of a no-strike clause providing for the arbitration of underlying disputes. In its opinion, the Court concluded,

> That the unavailability of equitable relief in the arbitration context presents a serious impediment to the congressional policy favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes. 398 U.S. at 253.

The Court also stated,

> Indeed, the very purpose of arbitration procedures is to provide a mechanism for the expeditious settlement of industrial disputes without resort to strikes, lockouts, or other self-help measures. This basic purpose is obviously largely undercut if there is no immediate effective remedy for those very tactics that arbitration is designed to obviate. 363 U.S. at 249.

In Buffalo Forge Co. v. United Steelworkers of America, 428 U.S. 397 (1976) the Supreme Court once again discussed the national labor policy in its decision. The Court stated,

> Striking over an arbitrable dispute would interfere with and frustrate the arbitral processes by which the parties had chosen to settle a dispute. The quid pro quo for the employer's promise to arbitrate was the union's obligation not to strike over issues that were subject to the arbitration machinery. Even in the absence of an express no-strike clause, an undertaking not to strike would be implied where the strike was over an otherwise arbitrable dispute. (Citations omitted.) Otherwise, the employer would be deprived of his bargain and the policy of the labor statutes to implement private resolution of disputes in a manner agreed upon would seriously suffer. 428 US at 407.

Given the broad arbitration provision, the no-strike clause and the fact that the underlying dispute arises out of the collective bargaining agreement, injunctive relief is clearly warranted and, in fact mandated, under the principles of <u>Boys Market</u> in this case. The enforcement, in the case at bar, of the Defendants' promise not to strike, slow down or walk out, will not undermine any crucial labor interest and is mandated by the overriding public interest discussed above. <u>Boys Market Inc. v. Retail Clerks Union Local 770,</u> <u>supra</u>; <u>US v. Cunningham,</u> 599 F.2d 120 (6th Cir. 1979) ; <u>Ryder Trucklines v. Local 480</u>, 727 F.2d 594 (6th. Cir. 1984).

      b.    The underlying dispute in the instant case is arbitrable under the terms of the collective bargaining agreement.

The underlying dispute which led to the Defendants' work stoppage and tie-up of equipment in violation of the no-strike clause clearly can be characterized as "arising from the provisions of this Agreement." (Article 7, Section 1) . Where, as in the instant case, a union engages in a work stoppage in violation of the contractual no-strike clause and where the dispute is one subject to arbitration under the agreement, an injunction is appropriate to enforce the union's obligation. <u>Boys Market, Inc. v. Retail Clerks Union Local 770</u>, <u>supra</u>; <u>U.A.W. v. Lester Engineering Co.</u>, 718 F.2d 818 (6th Cir. 1983).

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that its application for a temporary restraining order and preliminary injunctive relief be granted by the Court.

Respectfully submitted,

**DEAN & FULKERSON, P.C.**

By: s/Janet E. Lanyon
    Janet E. Lanyon (P34844)
    Kenneth W. Zatkoff (P40601)
801 West Big Beaver Rd., Fifth Floor
Troy, Michigan 48084
(248) 362-1300
Facsimile (248) 362-1358
jlanyon@dflaw.com

Attorneys for Plaintiff
Allied Systems, Ltd. (L.P.)

Dated: November 6, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2009, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to the following: James F. Wallington, Baptiste & Wilder, P.C., 1150 Connecticut Avenue, N.W., Ste. 500, Washington, D.C. 20036, jwallington@bapwild.com .

S/Janet E. Lanyon
Dean & Fulkerson, P.C.
801 W. Big Beaver Road, Ste. 500
Troy, MI 48084
(248) 362-1300
jlanyon@dflaw.com
(P34844)